RIGNEY and KIRLEY vs. SMITH.

Where B., with the intent to hinder and delay his own creditors, falsely and fraudulently held out to the public and pretended that personal property bought and paid for by him, and then in his possession, belonged to M., the lease of the store being in the name of M. and his name upon the awning; *Held* that after a creditor of M. had levied upon the property as M.'s B. could not be permitted to allege that the property belonged to him, instead of M.

THIS action was brought by the plaintiffs as assignees of Bartholomew O'Brien, to recover the value of certain articles of personal property taken from him by the defendant. The defendant justified as sheriff of Monroe county, under a judgment and execution in favor of G. A. Madden, against one Michael O'Brien. The proof showed that several years prior to 1855 Bartholomew O'Brien failed in business, and was then in embarrassed circumstances. In May, 1855, having accumulated about $1300, he desired to go into business. He could not do so in his own name, in consequence of the old debts, and applied to Michael for the use of his. A store was rented, and the goods were purchased, partly in Michael's name and partly in Bartholomew's. All the goods purchased in the name of Michael were paid for by Bartholomew. The license to sell liquor was taken in the name of Bartholomew, and every thing was in his possession and under his control as owner, he rendering no account whatever to Michael. In July, 1859, Bartholomew purchased a quantity of cigars, of the value of $172, in his own name. At this time all his debts had been settled, and he had generally made all purchases in his own name, after 1858. In October, 1859, the defendant levied upon and took all the goods in the possession of Bartholomew, including said cigars. The plaintiffs offered to show that there was nothing owing to Madden, and that the execution was issued by connivance with Michael, to put him in possession. The court excluded the evidence. The court refused to allow the case to go to the jury, and directed a verdict for the defend-

Rigney *v.* Smith.

ant. The case came before this court on a motion for a new trial, on exceptions ordered to be first heard at a general term.

*J. C. Cochrane,* for the plaintiff.

*W. F. Cogswell,* for the defendant.

*By the Court,* WELLES, J. After the evidence was closed the counsel for the plaintiff requested permission to go to the jury on the question of property in the articles claimed, which the court refused and directed the jury to find a verdict in favor of the defendant. Exceptions were duly taken by the plaintiff's counsel. In considering these rulings and decisions, the plaintiffs are entitled to claim that the question be determined upon the aspect most favorable to themselves which the evidence presents; and if there is a conflict in the evidence, they are entitled to have their version prevail, in preference to that of the defendant.

As between Michael and Bartholomew O'Brien, I think, under the evidence, the latter would be clearly entitled to have the question of the title to the property submitted to the jury. The levy and sale by the defendant were in October, 1859. Bartholomew testifies that all his debts were settled six or seven months before the levy; that all the property in question was bought and paid for by him with his own means, and that it had all been in his actual possession from the time it was purchased until it was levied upon by the defendant. If the question was between Bartholomew's creditors and Michael O'Brien, there would be no doubt of the right of the former to take the property on their executions against Bartholomew.

The question is whether the creditors of Michael O'Brien can lawfully take the property on executions against him. The fraudulent arrangement between the brothers O'Brien was intended to keep at bay the creditors of Bartholomew, and had no reference to the creditors of Michael. The

Rigney *v.* Smith.

evidence will admit of the position or hypothesis, or at least tends to prove, that the property in question, in fact, all belonged to Bartholomew, and that Michael really had no title to or interest in any of it. 'It also proves that he held out to the public that it belonged to Michael. This was so from the time Bartholomew resumed business in Rochester in 1855, until in 1858, and in some respects down to the time of the levy by the defendant. The property was purchased by Bartholomew, sometimes in his own name and sometimes in the name of Michael, and bills taken in the same way, depending, as Bartholomew testifies, upon the parties of whom he purchased. The lease of the store was taken in the name of Michael, and his name was upon the awning. Michael paid all the gas bills, until shortly before the levy. Bartholomew testifies that whatever papers were executed were in Michael's name. That he was embarrassed and could not have things in his own name. These were all significant acts on the part of Bartholomew, tending strongly to mislead the public and to give the impression that the property and the business belonged to Michael. The leading object, as he now avers, was in substance to hold out to his own creditors that he did not himself own the property. When creditors approached him that was his language. It was at the same time necessary, in order to make the concealment the more complete and the false pretenses the more plausible, to have an owner of the property. The one selected was his brother Michael. Thus matters were allowed to proceed, so far as the eye of the public was concerned, until an execution creditor of Michael makes his appearance and the property is levied upon. Up to this time the lease remains in Michael's name and the sign on the awning continues as at the first. It does not appear that any demonstration was at any time made, which the public would discover, indicating a change of the ostensible ownership of the property. The sum of the whole matter is that he falsely and fradulently held out to the public and pretended that the property belonged to

Michael with the intent to hinder and delay his own creditors. The creditor of Michael has taken him at his word and seized the property as Michael's, and he cannot now be permitted to allege the contrary. If when, as he says, he had settled with all his creditors, some six or seven months before the levy, he had then assumed to be the owner and removed all the *indicia* to the contrary, hoisted his sign in his own name and proclaimed by the usual indications in such cases that he was the real owner, the case would perhaps be different. But I think he has waited too long. It is now too late, after the rights of another have attached, founded upon his former allegations and acts, to change his position and claim the property to be his own. In such a case it was the imperative duty of the jury to find for the defendant, and an express direction of the justice so to find, implies no more.

The motion for a new trial should be denied, and the defendant should have judgment upon the verdict.

[MONROE GENERAL TERM, March 2, 1863. *Johnson, J. C. Smith* and *Welles*, Justices.]